# IN THE COURT OF APPEALS OF IOWA

No. 18-1617
Filed February 20, 2019

**IN THE INTEREST OF D.E.,**
**Minor Child,**

**M.E., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Pottawattamie County, Craig M.

Dreismeier, District Associate Judge.

 A mother appeals the termination of her parental rights. **AFFIRMED.**

 J. Joseph Narmi, Council Bluffs, for appellant mother.

 Thomas J. Miller, Attorney General, and John McCormally (until withdrawal)

and Anagha Dixit, Assistant Attorneys General, for appellee State.

 Roberta J. Megel, Council Bluffs, guardian ad litem for minor child.

 Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**DOYLE, Presiding Judge.**

The mother appeals the termination of her parental rights to her child D.E., born in May 2017.[1]  She argues the State did not establish termination was appropriate under Iowa Code section 232.116 (2018).  She also asserts she was not provided reasonable services for reunification.  We affirm.

### I.  *Statutory Framework and Standard of Review.*

Parental rights may be terminated under Iowa Code chapter 232 if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."  *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).  Our review is de novo, which means we give the juvenile court's findings of fact weight, especially the court's credibility assessments, but we are not bound by those findings.  *See M.D. v. K.A.*, 921 N.W.2d 229, 232 (Iowa 2018).  "For evidence to be 'clear and convincing,' it is merely necessary that there be no serious or substantial doubt about the correctness of the conclusion drawn from it."  *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983); *see also In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

### II.  *Background Facts and Proceedings.*

D.E. came to the attention of the Iowa Department of Human Services (DHS) shortly after the child's birth.  It was reported:

---

[1] The father's parental rights were also terminated.  He is not a party to this appeal.

> The hospital has held the baby a couple of extra days to provide the mother with some supervision and additional education in dealing with new born care and feeding issues. The mother has some mental health issues of her own and also is in an on again off again relationship with the child's alleged father . . . . He tried to run over the mother 2 weeks before the child's birth and also said he was going to kill the child when . . . it was born. The mother continues to have contact with him. She is living with her parents and her sister and both the grandmother and the sister have mental health issues so there is concern regarding the stability of the environment this child is in.

The child was subsequently removed from the mother's care and placed in foster care, where he has since remained. In July 2017, the child was adjudicated a child in need of assistance (CINA).

After the child was removed from the mother's care, the DHS offered numerous services to the mother. Family Safety, Risk, and Permanency services were specifically set up in early June 2017, but the mother was "not receptive to services." Supervised visitation was provided due to safety concerns, and the mother's June 28, 2017 visit

> had to be ended early due to [the mother] creating an unsafe situation for [the child,] as she was yelling and ranting about DHS involvement . . . . [She] was encouraged to calm down and [told] if she could not the visit would end early. [The mother] could not calm down.

Classes concerning parenting and domestic violence were offered to the mother.

Due to mental-health concerns, the mother was directed to obtain a psychiatric evaluation and follow through with any resulting recommendations. The mother received an evaluation in July 2017, and the psychologist opined the mother had "Bipolar I Disorder, manic, severe with psychotic features." The mother reported to the psychologist "a significant history of growing up in a chaotic family environment that is positive for frequent yelling, verbal outbursts, and

frequent physical altercations . . . ."  The mother also described "a significant history of physical abuse by [the child's father]. . . .  She stated that her early labor resulted from complications due to [the father] kicking and punching her."  Based upon the mother's history and the diagnoses, the psychologist strongly recommended the mother participate in individual therapy and follow up with her medication provider to help manage her mood symptoms.

Following a CINA review modification hearing on November 6, 2017, the juvenile court entered an order continuing the CINA adjudication and services for the family.  The DHS caseworker advised the court

> very little has changed for the family.  The drama and fighting amongst [the mother and father] as well as family members has not stopped and is weekly.  [The mother] has reported on a couple of occasions that [the father] has physically hurt her.  [The mother] reports that he has threatened her and said that if she tells anyone about what he does to her, he will kill her. . . .
> [The mother] was arrested on October 2, 2017, for disturbing the peace.  She had court on October 4, 2017.  On October 6, 2017, [the mother] filed a restraining/no contact order against [the father].  She dropped the no contact order when they went to court for the no contact order.

The mother also reported continuing issues between her and her family.

Though services continued to be offered, and the mother generally participated in the services, little changed over the course of the case concerning the violent relationships between the mother and the father and the mother and her family.  The juvenile court advised the mother that if she consistently and appropriately participated in the services, as well as refrained from fighting with family and the father, the child might be able to be placed in her care.  Nevertheless, the fighting continued.  The State filed its petition for termination of parental rights in July 2018.

A termination-of-parental-rights hearing was held in August 2018. Following the hearing, the juvenile court entered its order terminating the mother's parental rights. The mother now appeals.

### III. Discussion.

The mother contends the State failed to prove the grounds for termination, termination of her parental rights was not in the child's best interests, an exception to termination under section 232.116(3) should be applied to prevent termination of her parental rights, and she was not provided reasonable services for reunification. We begin with the latter argument.

### A. Reasonable Efforts.

On appeal, the mother states she "has gone above and beyond what has been asked of her in this case. She has literally done everything that has been ordered and asked, yet the [DHS] is still keeping her child away from her. This is not reasonable efforts." However, the record evidences the mother was provided reasonable services for reunification.

Iowa law requires the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *see also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "Generally, in making reasonable efforts to provide services, the State's focus is on services to improve parenting." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). "However, in making reasonable efforts to provide services, the State need not search for unavailable services." *Id.* Providing services can be particularly difficult if the parent fails to recognize his or her limitations or deficiencies. *See id.*

Here, the mother was zealously represented in the CINA and termination-of-parental-rights proceedings, and numerous services were offered to her by the DHS. Additionally, as early as June 2017, the mother was advised she needed to "obtain safe and suitable housing free of any type of fighting, verbal and physical, to demonstrate stability within her household." There is no evidence the mother requested any additional services during the case to help her fulfill this particular requirement. Moreover, it is unclear what more the DHS could have done under the facts of the case. The mother testified at the termination-of-parental-rights hearing that she recognized the constant fighting was a problem that affected her son, and she testified she was trying to change it, but she placed blame on others for her own behavior. It was recommended she participate in therapy and follow the suggestions of the psychologist, including taking medication. Even assuming her failure to fully engage in therapy was the fault of her providers, she testified at the hearing she was no longer taking the recommended medication because she did not think she needed it. She testified she believed the DHS's involvement with her and her child was the unfair result of its involvement with her sister's family. The mother testified the place she was living was safe and secure, then she admitted she lived with her sister—with whom she constantly fought—and her sister's husband—a man the mother reported had grabbed her bottom and exposed himself. She admitted she continued to have a relationship with the father, the man who she said threatened to kill her child, on-and-off throughout the case. It is clear the DHS provided the mother reasonable services for reunification, but her testimony reveals she either has no real understanding of the dangers her

child would face in the chaotic and sometimes violent environment surrounding the mother's life, or she simply does not care.

### B. Grounds for Termination.

The juvenile court found the State proved the grounds for termination set forth in Iowa Code section 232.116(1) paragraphs (e) and (h). When the juvenile court finds more than one ground for termination under section 232.116(1), "we may affirm . . . on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our analysis on paragraph (h).

Among other things, paragraph (h) requires the State prove the child could not be returned to the parent's care "at the present time." *See* Iowa Code § 232.116(1)(h)(1)-(4); *see also A.S.,* 906 N.W.2d at 473 (discussing paragraph (h)). "At the present time" means at the time of the termination-of-parental-rights hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Upon our de novo review of the record, we find clear and convincing evidence the child could not be returned to the mother's care at the time of the termination-of-parental-rights hearing.

As previously discussed, the mother was told she needed to "obtain safe and suitable housing free of any type of fighting, verbal and physical, to demonstrate stability within her household," and she failed to do so. The record shows that the child could not be safely returned to her care at the time of the termination-of-parental-rights hearing for that reason. Consequently, we find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h).

### C. Best Interests and Section 232.116(3) Considerations.

The mother argues termination of her parental rights was not in the child's best interests, arguing that she and the child share a strong bond and termination of her parental rights would be devastating to the child. The facts of this case do not support her arguments.

The child had been removed from the mother's care for more than a year at the time of the termination-of-parental-rights hearing. Yet, there was no evidence the mother ever truly improved her living situation. After the statutory time period for termination has passed, termination is viewed with a sense of urgency. *See C.B.*, 611 N.W.2d at 495. Children are not equipped with pause buttons, and a child cannot be deprived "of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (cleaned up).

We believe the mother loves her child and shares a bond with the child. Nevertheless, she was given a year to demonstrate she could safely care for the child without supervision. She testified she understood the safety concerns and the affect her chaotic living style had on the child. But even after participating in the services provided, serious concerns remained about her living situation and her ability to put her child's needs first. We are unable to conclude that her parenting ability will improve in the foreseeable future to enable her to raise the child without ongoing help from others. Considering the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child, we agree with

the juvenile court that termination of the mother's parental rights is in the child's best interests and find no reason to disturb the court's finding that none of the exceptions to termination found in section 232.116(3) apply here.

## IV.  *Conclusion*.

We find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h) and termination of the mother's parental rights is in the child's best interests.  We find no reason to disturb the juvenile court's finding that none of the exceptions to termination found in section 232.116(3) apply here, and we agree the DHS provided reasonable services for reunification.  We therefore affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**